UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80674-CIV-MARRA

DAN PRONMAN, an individual,
GARY PRONMAN, an individual,
and MOVIE STAR MUSCLECARS, INC.,
a foreign corporation,

Plaintiffs,

vs.

BRIAN STYLES, an individual,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f) (DE 26) and Plaintiffs' Motion to Strike Defendant's Reply (DE 30).  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiffs Dan Pronman ("D. Pronmon"), Gary Pronman ("G. Pronmon") and Movie Star Musclecars, Inc. ("MSMC")  (collectively, "Plaintiffs") bring a nine-count Complaint against Defendant Brian Styles ("Defendant") for violations of sections 43(d), 43(a), 32 and 43(c) of the Lanham Act (counts one through four), common law trademark infringement (count five), copyright infringement under article 5(1) of the Berne Convention and 17 U.S.C. § 102(a) (count six), trademark dilution pursuant to Florida Statutes § 495.151 (count seven), deceptive and unfair trade practices act pursuant to Florida Statutes § 501.201 (count eight) and preliminary and

permanent injunction (count nine).  (Compl, DE 1.)  The Complaint alleges the following:

MSMC is an internationally known company that purchases, restores and sells classic automobiles.  In connection with its business, MSMC, through its principles G. and D. Pronmon, takes unique pictures of its restored automobiles and publishes these photographs on its corporate internet site, www.moviestarmusclecars.com.  (Compl. ¶13.)  At all times, Plaintiffs have been the sole proprietor of its respective rights, titles, interests and copyrights in the subject works.  (Compl. ¶ 20.)  G. and D. Pronmon are natural persons, co-founders and co-principles of MSMC and have established a good business reputation within the classic car restoration industry under the service marks of GPmusclecars and DPmusclecars.  (Compl. ¶ ¶ 10-11.)

Defendant is an accomplished computer software engineer and computer technology expert. (Compl. ¶ 24.)  He is also a dealer in rare, classic automobiles and is a direct competitor with MSMC for the procurement of these automobiles. (Compl. ¶ 25.)  Upon information and belief, Defendant is also a "domainer," an individual who procures internet domain names, monetizes them, and sells them for profit and, upon information and belief, is a co-founder and principle of Domain Profits, LLC, a company that is in the business of procuring domain names, monetizing them, and selling them for profit. (Compl. ¶ 21.)  Upon information and belief, Defendant owns or has a propriety interest, either directly or indirectly, in 300 to 800 internet domain names. (Compl. ¶ 22.)  Many of these names lead to websites devoid of content or contain barebones content. Upon information and belief, many of Defendant's internet sites automatically send internet users to other sites of Defendant's.  (Compl. ¶ 23.)

In April of 2009, Defendant entered into an $84,000.00 contract with MSMC to purchase an automobile from MSMC.  After Defendant breached the contract with MSMC, MSMC

2

withheld delivery of the automobile. Defendant then demanded that MSMC pay him $255,000.00 and, when MSMC refused, Defendant initiated an internet defamation and harassment campaign against Plaintiffs. (Compl. ¶ 26.)  In July of 2009, Defendant launched the [www.garypronman.com](www.garypronman.com) and [www.moviestarsmusclecars.com](www.moviestarsmusclecars.com) internet sites as part of a smear campaign against Plaintiffs. (Compl. ¶ 27.)  Between February 2010 and April 2010, Defendant registered numerous additional domain names for his website, thus creating the appearance of being a MSMC, D. Pronman or G. Pronman-sponsored website. (Compl. ¶¶ 28-29, 31.)  Except for one of these, all the domain names redirected visitors to Defendant's internet sites.  These websites expose the visitors to (1) misinformation about Plaintiffs; (2) an email message page that transmits the sender's message to Defendant and (3) links to third-party commercial ventures as well as links to Plaintiff's direct business competitors. (Compl. ¶¶ 30, 32.)

     Defendant used and copied Plaintiffs' photographs on its website, without Plaintiffs' consent. (Compl. ¶¶ 33-34.)  Defendant did not pay Plaintiffs for the use of their photographs. (Compl. ¶ 35.)   Defendant's website promotes his commercial interests and/or the interests of Plaintiffs' direct business competitors by encouraging visitors to contact him regarding MSMC, provides the names of "recommended classic 'car people'" who are direct competitors of Plaintiffs, seeks donations to fund Defendant's state court action against Plaintiffs, and provides links to the commercial websites of Plaintiffs' direct competitors. (Compl. ¶ 36.)  Upon information and belief, Defendant placed metatags and title tags containing Plaintiffs' service marks on his website with the intent to divert traffic from the Plaintiffs' websites to Defendant's websites. (Compl. ¶ 38.)  Defendant also copied original content from MSMC's website and placed MSMC's header on the landing page of Defendant's website. (Compl. ¶ 39.)  In sum,

Defendant employed numerous visible and invisible internet techniques designed to get consumers and search engines into "hitting" his internet sites about Plaintiffs. (Compl. ¶ 40.)

Defendant makes the following arguments: (1) the Complaint is a shotgun pleading, containing immaterial, conclusory and inflammatory allegations; (2) count one contains hearsay and is conclusory; (3) count two fails to allege that Plaintiffs lost business or used their service mark in commerce; (4) the Complaint fails to allege Plaintiff has a trade or service mark entitled to protection or that Defendant used an imitation of their marks in commerce; (5) the Complaint fails to allege that the mark is famous; (6) the Complaint fails to allege intentional misconduct and gross negligence; (7) the Complaint fails to plead adequately ownership of the photographs; (8) the Complaint should be dismissed under the doctrine of "unclean hands" and laches; (9) the Court should abstain from exercising jurisdiction and (10) Plaintiffs have failed to meet the pleading requirements for injunctive relief.

Plaintiffs respond that there are no grounds to strike the Complaint and that the Complaint is not conclusory. With respect to unclean hands and laches, Plaintiffs state that these defenses do not apply. Lastly, Plaintiffs state that the Court must exercise jurisdiction over the instant matter and the Complaint meets the requirements for injunctive relief.

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

The Court begins by noting that this Complaint does not constitute a shotgun pleading. In those cases, it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. District Board of Trustees of Central Florida Community College, 77 F.3d 364, 366 (11th 1996). Here, it is clear from the Complaint that Plaintiffs are accusing Defendant of violating various intellectual property rights with respect to Plaintiffs' photographs and websites. In other words, both the Court and Defendant can ascertain from the Complaint how Plaintiffs were allegedly wronged by Defendant, what legal theories Plaintiffs are pursuing and how the factual assertions play into those legal theories. As such, this is not a shotgun pleading and Defendant's motion to strike on this basis is denied.

Likewise, the Court has reviewed the paragraphs of the Complaint that Defendant claims should be stricken due to immaterial, irrelevant and inflammatory allegations and finds nothing improper about these allegations. They serve to provide either meaningful context for the claims or necessary background facts. With respect to Defendant's complaint about "hearsay allegations," hearsay is a rule of evidence, not applicable to a pleading. Whether Plaintiffs can prove the allegations with admissible evidence at trial is another matter which need not be resolved at this stage of the proceeding.

The Court will now address Defendant's assertion that Plaintiffs have failed to state valid claims. Count one, brought pursuant to the cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. PetMed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks and (3) the defendant registered the domain names with the bad faith intent to profit from them. Bavaro Palace. S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006); Louis Vuitton Malletier, S.A. v. 100wholesale.com, No. 12–21778–CIV, 2013 WL 1296283, at * 5 (S.D. Fla. Mar. 28, 2013).

Defendant argues that Plaintiffs have not pled, other than in conclusory terms, that the mark enjoys widespread recognition by consumers. The Complaint states that Plaintiffs' service/trademarks are distinctive and/or famous. (Compl. ¶ 47.) Furthermore, Plaintiffs allege that the "MSMC is an internationally known company that purchases, restores and sells classic

6

automobiles" and that the individual Plaintiffs are natural persons, co-founders and co-principles of MSMC and have established good business reputations in classic car restoration industry under the service marks of GPmusclecars and DPmusclecars. (Compl. ¶¶ 10-11, 13.)  These allegations are not conclusory.

Moreover, the Court rejects Defendant's argument that the Complaint does not adequately address multiple factors necessary to show that a name has acquired secondary meaning or that Defendant possesses a bad faith intent to profit from that mark.  These multiple factors, however, do not need to be alleged in the Complaint.  Indeed, the case cited by Defendant with respect to secondary meaning arose in the context of the granting of an injunction. (Mot. at 11 citing Conagra, Inc. v. Singleton, 743 F.2d 1508 (11th Cir. 1984)).  With respect to evidence of bad faith and other factors, Defendant may obtain that information from discovery.

Next, Defendant moves to dismiss the claim for trademark/service mark infringement of unregistered marks pursuant to 15 U.S.C. § 1125(a) of the Lanham Act[1] on the basis that the

---

[1] 15 U.S.C. § 1125(a) provides:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

Complaint does not adequately allege that Plaintiffs have been damaged, that Defendant is their direct competitor or that Defendant used their mark in commerce. (Mot. at 14.)  The Court finds that paragraph 36 adequately alleges that Plaintiffs have been damaged by Defendants' alleged use of confusingly similar websites to divert business from them.  Likewise, paragraphs 25 and 36 sufficiently allege that Defendant is a direct competitor to Plaintiffs and used Plaintiffs' marks in commerce.

Defendant makes several summary arguments with respect to counts three through eight. To the extent these arguments repeat those raised with respect to counts one and two, the Court rejects those arguments.  The Court will briefly address the remaining arguments.  The Court finds that the Complaint adequately pleads facts that Defendant used an imitation of their marks in commerce (Compl. ¶¶ 27-32, 36), that Defendant acted with either intentional misconduct or gross negligence (Compl. ¶¶ 26-36) and that Plaintiffs have rights to the photographs (Compl. ¶ 20).  With respect to the argument that the Complaint does not recognize that Defendant falls under an exception to trademark dilution under Florida law of comparative advertising, the Court finds that whether or not Defendant falls under this exception is a factual question that cannot be resolved on a motion to dismiss. Florida Statute § 495.151(3)(a).[2]  In addition, "fair use" is also

---

commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)

[2] Florida Statute § 495.151(3)(a) provides:

 (3) The following shall not be actionable under this section:

(a) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous

an affirmative defense and Plaintiffs are not required to negate an affirmative defense in their complaint.  See Peter Letterese and Assocs., Inc. v. World Institute of Scientology Enterprises, International, 533 F.3d 1287, 1307 n.21 (11th Cir. 2008) (fair use is an affirmative defense); Ventrassist Pty Ltd. v. Heartware, Inc., 377 F. Supp. 2d 1278, 1286 (S.D. Fla. 2005) (plaintiffs are not required to negate an affirmative defense in the complaint); cf. PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act).

Lastly, the Court rejects Defendant's objection to the use of "upon information and belief" in the Complaint.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard, which applies to all civil actions . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible").[3]

    Nor will the Court dismiss the Complaint on the basis of unclean hands or laches.  These are affirmative defenses that may be raised by Defendant in his answer.  Fed. R. Civ. P. 8(c)(1); Pretka v. Kolter City Plaza II, Inc., No. 09–80706–CIV, 2011 WL 3204256, at * 5 (S.D. Fla. July 27, 2011) (stating that while the Court cannot resolve laches at the motion to dismiss stage, the

---

mark.

Florida Statutes § 495.151(3)(a).

[3] Although some of the "information and belief" statements in the Complaint do not fall under these two prongs, the Court does not see the objected-to statements as requiring dismissal of the Complaint.

defendant is not precluded from raising this argument by way of defense). They are also equitable remedies that are fact intensive, thereby making them an unsuitable basis for dismissal at the pleading stage. See Cohen v. Kravit Estate Buyers, Inc., 843 So. 2d 989, 992 (Fla. Dist. Ct. App. 2003) (unclean hands is factual question); Barineau v. Barineau, 662 So. 2d 1008, 1008 (Fla. Dist. Ct. App. 1995) (material issues of fact as to the affirmative defense of laches).

Nor will the Court abstain under the Colorado River doctrine. See generally Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). In Moorer v. Demopolis Waterworks and Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004), the Eleventh Circuit explained the doctrine:

> The Colorado River doctrine of "exceptional circumstances" authorizes a federal "district court to dismiss or stay an action when there is an ongoing parallel action in state court." . . .The principles of this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" . . . Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" they may defer to a parallel state proceeding under "limited" and "exceptional" circumstances. . . . Among the factors the district court should consider in determining whether such exceptional circumstances exist are:
>
>> (1) the order in which the courts assumed jurisdiction over the property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. . . .
>
> The decision whether to dismiss "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." . . . The weight of each factor varies on a case-by-case basis, depending on the particularities of that case. . . .One factor alone can be the sole motivating reason for the abstention. . . .

Moorer, 374 F.3d at 997 (citations omitted).

The threshold inquiry that the Court must make before it moves on to the criteria

10

discussed above is whether the state and federal actions involve substantially the same parties and substantially the same issues. See Ambrosia Coal and Construction Company, 368 F.3d 1320, 1330 (11th Cir. 2004).  The Court cannot undertake this inquiry in the absence of copies of the relevant state court pleadings.  Not only does the Court not have the state court pleadings, but Defendant even failed to outline the causes of action in the state court proceeding and compare them to the causes of action before this Court to show that the cases have parallel issues.

Finally, the Court rejects Defendant's argument that Plaintiffs have not pled irreparable harm and it is unclear what the Court should enjoin.  The Complaint alleges that Defendant engaged in infringing activities on its websites, thereby satisfying these requirements. (Compl. ¶ ¶ 29, 33.)

IV. Conclusion

According, it is hereby **ORDERED AND ADJUDGED** as follows:

1)   Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f) (DE 26) is **DENIED**.

2)   Plaintiffs' Motion to Strike Defendant's Reply (DE 30) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of July, 2013.

KENNETH A. MARRA
United States District Judge