UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80674-CIV-MARRA

DAN PRONMAN, an individual,
GARY PRONMAN, an individual,

Plaintiffs,

vs.

BRIAN STYLES, an individual et al.,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion for Final Summary Judgment

against Plaintiffs on all counts of the Third Amended Complaint and Counts II, III and IV of

Defendants' Counterclaim (DE 354); Plaintiffs' Motion for Partial Summary Judgment (DE 356)

and Plaintiffs' Motion to Suppress Unverified Deposition Transcript of Corporate Representative

Witness Moviestars Musclecars (DE 363).  The Court has carefully considered the Motion and is

otherwise fully advised in the premises.

I.  Background[1]

The facts, as culled from affidavits, exhibits, depositions, answers, answers to

interrogatories and reasonably inferred therefrom, for the purpose of this motion, are as follows:

On April 25, 2009, Defendant Brian Styles ("B. Styles") attempted to purchase a 1969 ½

---

[1] Numerous paragraphs in Plaintiffs' response to Defendants' statement of facts do not contain any record citations and therefore the Court will deem admitted Defendants' facts which are supported by record citations.  S.D. Fla L. R. 56.1(b).   Likewise, any statement of fact in Plaintiffs' motion for partial summary judgment that is not supported by record citations will be disregarded.  Id. at 56.1(a).

Superbee vehicle from Plaintiffs. (B. Styles Aff. ¶ 3, Ex. 10, DE 354-10.)  The terms of the deal

were set forth in an email chain between B. Styles and Plaintiff Gary Pronman ("G. Pronman").

B. Styles purchased the vehicle for $84,000.00, which, according to B. Styles, included G.

Pronman's broker fee. (B. Styles Aff. ¶ 4.)  On April 25, 2009, G. Pronman sent B. Styles a Bill

of Sale which stated that the seller was Moviestar Musclecars and that B. Styles should wire the

$84,000.00 purchase price to the Laurentian Bank of Canada. (B. Styles Aff. ¶ 5.)  B. Styles

immediately wired the $84,000.00 purchase price to the Laurentian Bank of Canada, but never

received the vehicle and his money was never returned, despite demanding it back. (B. Styles

Aff. ¶ 4.)  In order to obtain the vehicle or the return of the purchase price, B. Styles initiated a

lawsuit in state court on August 7, 2009, which remains pending. (B. Styles Aff. ¶ 5.)  Plaintiffs

point to an email exchange that shows that the parties had a dispute over (1) whether the payment

for the vehicle should be made to Plaintiffs or the seller directly and (2) the fact that the car had a

Canadian title. (Pl. Ex. 4, DE 362-1.)

Once B. Styles believed he was defrauded, he registered the domain name

"garypronman.com" on June 30, 2009 using account number 9419895 from IP address

206.53.153.153. (B. Styles Aff. ¶ 8; GoDaddy records, Ex. 7, DE 354-7; Pl. Ex. 43, DE 362-4.)

B. Styles used this domain name to identify a website known as www.garypronman.com.  On or

about July 2009, B. Styles published content to this website. (Copy of website, Ex. A to Ex. 10,

DE 354-10.)  According to B. Styles, the website was created for several purposes: (1) to warn

other classic car enthusiasts about how to protect themselves if they do business with the

Pronmans; (2) to warn classic car enthusiasts and hobbyists about dishonest people who prey on

the classic collector car community; (3) to provide tips on how to generally protect oneself during

the purchase of a vehicle and (4) to provide a resource to find unaffiliated suppliers and niche specialists to the classic car community whom B. Styles believed to be reputable. (B. Styles Aff. ¶ 10.)  B. Styles did not receive any remuneration or anything of value for his vendor recommendations and he does not know whether anyone visiting the website ever used any of the identified vendors. (B. Styles Aff. ¶ 11.)

For about two months beginning April 25, 2012, the website requested donations to defray B. Styles legal expenses in the state court lawsuit, but this request was "never intended to be taken literally" and B. Styles did not receive any donations.  This request was an "attempt at satire." (B. Styles Aff. ¶ 12.)  B. Styles' website had a mechanism for taking credit card payments. (B. Styles website, Ex. 9, DE 362-1.)  B. Styles has never been a competitor of Plaintiffs and never used this website for commercial gain or purposes.  B. Styles never secured any business arising from visitors to the website and never received any money from the website. (B. Styles Aff. ¶ 13.)

B. Styles purchased three other domain names associated with G. Pronman (gpmusclecars.com moviestarsmusclecars.com and garyconman.com).  B. Styles registered gpmusclecars.com and moviestarsmusclecars.com on July 10, 2009 from IP address 98.117.9.174. (GoDaddy records, Ex. 7, DE 354-7.)   B. Styles registered the domain name garyconman.com from IP address 74.174.236.120. (GoDaddy records, Ex. 7, DE 354-7.)   In 2010, B. Styles transferred these three domain names for no consideration to a unidentified third party who also claimed to have been cheated by Plaintiffs. (B. Styles Aff. ¶ 14.)  B. Styles never intended to sell to Plaintiffs any of the domain names relating to Plaintiffs for a profit.  Instead, B. Styles intended to use the names to make the hobby safer for all classic car collectors. (B.

Styles Aff. ¶ 15.)  On February 9, 2012, B. Styles purchased two other domain names associated

with Plaintiffs (gary-pronman.com and dan-pronman.com). Both of these domain names got

forwarded to the www.garypronman.com website, and have no content of their own. (B. Styles

Aff. ¶ 16.)  According to Defendants, B. Styles has never owned, registered or used in any way

the following domain names: moviestarmusclecar.com, danconman.com, garypornman.com,

danpornman.com or dpmusclecars.com. (B. Styles Aff. ¶ 17.)

According to Defendants, on February 1, 2010, an unidentified third party, known only by

the email of garyconman.com, emailed B. Styles and asked him if he would be willing to sell a

domain name relating to G. Pronman which B. Styles had previously registered. (B. Styles Aff. ¶

18.)  Instead, B. Styles offered to give him www.garyconman.com and

www.moviestarsmusclecars.com domain names for free. (B. Styles Aff. ¶ 20.)  B. Styles

transferred garyconman.com, but mistakenly transferred gpmusclecars.com instead of

moviestarsmusclecars.com to this third party.  Months later, B. Styles received a message from

the domain registrar, GoDaddy.com, to renew the moviestarsmusclecars.com registration for

another year.  Upon realizing he had not transferred the moviestarsmusclecars.com domain name

to the unidentified third party, B. Styles renewed the domain name for another year and then

proceeded to transfer the renewed registration to the unidentified third party.  (B. Styles Aff, ¶

21-22, GoDaddy documents, Ex. 11 at 14, 16, 23, DE 354-11.)

The domain name moviestarsmusclecars.com was put into a private registration with

Domains by Proxy on July 31, 2011 and the registrant was identified as Patrick Young. (Domains

by Proxy at 1-4, Ex. 8, DE 354-8.)  On July 31, 2011, a website was posted to the domain name

moviestarsmusclecars.com. (GoDaddy documents at 000032, Ex. 11.)  B. Styles did not publish

4

any content to that website and had nothing to do with it being published. (B. Styles Aff. ¶ 23.)

Plaintiffs have submitted an affidavit of Patrick Young which states that he never registered or posted any content on any domains at issue in this case. (Young Aff. ¶ 5, Ex. 3, DE 362-1.)  Young states that B. Styles sought to "frame him for blatant copyright and trademark infringement." (Young Aff. ¶ 4.)  Young also states that he had nothing to do with the domain names related to Movie Star Musclecars, Dan Pronman or Gary Pronman. (Young's response to Subpoena Duces Tecum, Ex. 38, DE 362-3.)

The parties agree that Godaddy account number 33703957 set up and registered the domain name moviestarmusclecar.com on February 1, 2010.  A gift card from the Boca Raton Town Center mall was used to purchase that internet account through that Godaddy account number.  (Exs. 37, 39, DE 362.)  Defendant S. Styles, B. Styles' girlfriend, made purchases at the Boca Raton Town Center Mall on December 22, 2009, but there is no record of a purchase of a gift card. (Ex. 37, DE 363.)  On February 1, 2010, the email address webmaster@garypronman.com received an email from garyconman@live.com asking to buy the gary pronman-related doman name.  (Pl. Ex. 45, DE 362-4.)

On February 1, 2010, GoDaddy account number 33703957 registered the domain name moviestarmusclecar.com.  (GoDaddy records, Ex. 7, DE 354-7.)  On February 10, 2010, GoDaddy account number 33703957 updated domain forwarding for the domain name moviestarmusclecar.com from IP address 70.90.56.14, which was assigned to the Delray Beach Library.  The contact information was changed from garypronman@live.com to garyconman@live.com (GoDaddy records, Ex. 7, DE 354-7; Pl. Ex. 26, DE 363-2.)  On March 18, 2010, GoDaddy sent B. Styles an email informing him that there had been a recent change in

5

registrant for the domain names: gpmusclecars.com and garyconman.com. (GoDaddy records, Ex. 7, DE 354-7.)

On March 19, 2010, GoDaddy account 33703957 requested a domain contact update. (GoDaddy records, Ex. 7, DE 354-7.)  The parties agree that, on August 3, 2010, account number 33703957 registered two new domain names garypornman.com and danpornman.com. On September 5, 2011, IP address 64.134.60.23 executed a cancellation of the following domain names: Stylescollections.com, candiansbyflorida.com, classmusclecarrestorations, canadiansbyflorida.com, danconman.com, garyconman.com, gpmusclecars.com, dpmusclecars.com, classic-muscle-car-restorations.com and danpornman.com.

None of the following trademarks are the subject of a federal trademark registration: (1) movie star muscle cars; (2) gary pronman; (3) dan pronman; (4) gpmusclecars and (5) dpmusclecars. (Ex. 4 at ¶¶ 13, 15, 17, 19, DE 354-4.)   Plaintiffs claim they have spent $10,000.00 in advertising using the Movie Star Musclecars mark.  (D. Pronman Dep. at 171, DE 272-2.)  The names D. Pronman and G. Pronman have been referenced in six print articles from four classic car magazines, and the reference to Plaintiffs refers to their ownership of the cars. (Exhibit 1, DE 157.)

Robert Wolf, a car enthusiast since 1978 and automobile journalist since 1988, states that Plaintiffs' names are not synonymous with finding and procuring rare classic cars or valuing, verifying or restoring classic cars. (Wolf Aff. ¶ 12-13, DE . 282-9.)   The same is said by other car enthusiasts and collectors. (Robert Yapell Aff. ¶ 6; Mark Schilling Aff. ¶¶ 3-4; Tim Wellborn Aff. ¶ 5; Kenneth Mosier Aff. ¶ 8; Scott Lindsey Aff. ¶ 9; Patrick Krook Aff. ¶ 8; Troy Angelly Aff. ¶ 7; David Meister Aff. ¶¶ 8-9, DE 282-9.)

B. Styles is a car enthusiast and does not buy, sell, broker or restore classic cars as a business. To the extent that he (or his girlfriend, Defendant S. Styles) purchase collectible cars, they are used for their personal use and enjoyment. Defendants have no employees, engage in no advertising and the classic cars they purchase are not made with the sole intention of making a quick profit. Collecting classic cars is a hobby. (B. Styles Aff. ¶ 27.)  Plaintiffs are aware that B. Styles is a multimillionaire. (Pl. Verified Second Am. Counterclaim in state court ¶ 26, DE 48-2.)

On November 10, 2011, the Register of Copyrights issued a copyright registration for the photo restorations of classic cars, identified by number VA 1-803-703 with the effective date of the registration being November 10, 2011. (Copyright registration, Ex. 15, DE 354-18.)  The copyright registration was based on unpublished works. (July 14, 2015 D. Pronman Dep. at 301, DE 272-2.)  The copyrighted work was titled "Classic Car Restoration Encyclopedia." (Copyright registration.)  Some of the photographs covered by the copyright registration were not taken by either Plaintiff, despite the fact that they were both listed as authors.  (D. Pronman Dep. 273-74, DE 272-2.) Plaintiffs have not received any licensing or royalty fees for any of the restoration photographs which make up copyright registration number VA 1-803-703. (Pl. D. Pronman Resp. to Def. First Request for Admissions ¶ ¶ 9-10; Pl. G. Pronman Resp. to Def. First Request for Admissions ¶ ¶ 6-7.)  No buyer has made an offer for the photographs. (July 14, 2015 Dep. Of D. Pronman at 234.)

Plaintiffs agreed to share all rights between them to any trademarks and those marks include moviestar musclecars, gp musclecars and dp musclecars.  (D. Pronman Aff. ¶ ¶ 5-6, DE 356-7; G. Pronman Aff. ¶ ¶ 5-6, DE 356-7.)

Defendants move for summary judgment on the following grounds: (1) Plaintiffs have no standing to enforce MSMC's trademarks; (2) Plaintiffs' claim pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), fails because only three of the eleven domain name were registered to B. Styles and the record does not show that B. Styles had a bad faith intent to profit; (3) the Lanham Act, common law trademark infringement and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims, Florida Statute § 501.201, fail due to the lack of consumer confusion; (4) Plaintiffs' trademarks are not registered; (5) Plaintiffs' marks are not distinctive or famous; (6) the copyright claim fails due to a lack of damages and (7) Defendants are entitled to summary judgment on the abuse of process claim.

Plaintiffs move for summary judgment on their ACPA claim. In addition, they move for summary judgment on Defendants' counterclaims for copyright invalidity, trademark invalidity and non-infringement and abuse of process.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the

8

absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III.  Discussion

A.  Standing

Before discussing the various claims at issue, the Court turns to Defendants' preliminary argument that Plaintiffs may not seek relief for a claim which belongs to MSMC, the corporate entity that has been dismissed by prior Order of the Court.  According to Defendants, Plaintiffs assertion that they, Gary and Dan Pronman, own the marks at issue is inconsistent with their earlier pled position that MSMC owned the marks.  Specifically, Defendants contend that Plaintiffs cannot enforce MCMC's mark because they were "never assigned MSMC's goodwill or otherwise purchased the assets of the business as a going concern."  (DE 354 at 17.)

The Court rejects this argument.  Defendants' argument is premised on the fact that MSMC owned the marks.   The Court has reviewed all the pleadings (as well as proposed pleadings) in this case (DE 1, DE 60, DE 184 and DE 296) and has found no allegation that MSMC owned the marks.  Instead, the pleadings allege that Dan and Gary Pronman owned the marks.  (DE 1 at ¶ 45; DE 60 at ¶ 66, DE 184 at ¶ 12, DE 296 at ¶ 6[2].)  Since Dan and Gary Pronman have always alleged they own the trademarks, Defendants were required to establish, as a matter of law, that Plaintiffs were not the owners in order to obtain summary judgment on the question of standing.  In view of Plaintiffs' sworn assertions that they are and always have been the owners of the marks, Defendants have failed to sustain their burden on summary judgment. (D. Pronman Aff. ¶ ¶ 5-6, DE 356-7; G. Pronman Aff. ¶ ¶ 5-6, DE 356-7.)  Since Defendants' have not established, as a matter of law, that MSMC was the owner of the marks in the first

---

[2] The Third Amended Complaint ("TAC") (DE 296) contains two paragraphs labeled "six."  The Court refers to paragraph six on page 9 of the TAC.

instance, they have also failed to establish, as a matter of law, that the ownership rights to the marks were unlawfully transferred.  Thus, genuine issues of material fact exist as to whether Plaintiffs are the owners of the trademarks and summary judgment cannot be granted for Defendants on this basis.

B.  Count I (ACPA)

The ACPA, the cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. Noveshen v. Bridgewater Assocs., LP, — F. Supp. 3d —, 2014 WL 4682709, at * 5 (S.D. Fla. Sept. 22, 2014);  PetMed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004).  Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks and (3) the defendant registered the domain names with the bad faith intent to profit from them. Noveshen, 2014 WL 4682709, at * 5.

In order to be entitled to the protections of the ACPA, a mark must be distinctive at the time of registration of the domain name. See 15 U.S.C. § 1125(d)(1)(A)(ii)(II). The element of the anti-cybersquatting claim that a mark is distinctive or famous is similar to the consumer confusion factor in a trademark infringement context in that a plaintiff must show that the mark is either inherently distinctive or is a descriptive mark that has acquired secondary meaning. Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).  Once a plaintiff has established that the mark is distinctive, and therefore protectable, the plaintiff must then prove that the defendant used a domain name that is identical or confusingly similar to the plaintiff's mark. 15 U.S.C. §

1125(d)(1)(A)(ii)(II).  For example, a domain name that completely incorporates a mark into its domain name would likely confuse, mislead or deceive consumers into the mistaken belief that a registrant's website was endorsed by the trademark owner. <u>Victoria's Cyber Secret v. V Secret Catalogue, Inc.</u>, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001).  After establishing the distinctiveness of its mark and an identical or confusingly similar use, a plaintiff must demonstrate that the defendant had bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1125(d)(1)( A)(i). To determine whether a defendant possesses the required bad-faith intent to profit from a plaintiff's mark, courts consider nine factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

In seeking summary judgment, Defendants contend that the websites B. Styles created do not show a bad faith intent to profit because the creation of a website was dedicated to criticism of a mark holder.  See, e.g., TMI, Inc. v. Maxwell, 368 F.3d 433, 439 (5th Cir. 2004) (the site's purpose as a method to inform potential customers about a negative experience with the company did not establish a bad faith intent to profit).  In contrast, Plaintiffs seek summary judgment, claiming that B. Styles registered the domain name with the bad faith intent to profit.

A review of the record evidence shows that the Court cannot make this determination as a matter of law.  See Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir.1991) (vacating the grant of summary judgment on the issue of intent in a trademark case because intent is question of fact for the factfinder).  The undisputed evidence shows that B. Styles' website solicited donations to fund his state court lawsuit against Plaintiffs.  To that end, the website allowed visitors to make credit card payments.  Although B. Styles argues that such a solicitation was "patently satire," the Court concludes this question raises a genuine issue of material fact.  Moreover, the Court cannot find, as a matter of law, that B. Styles' website was intended only to defray legal expenses and was not intended to be for profit.  Thus, with respect to the domain names that B. Styles admits he controlled (garypronman.com, gary-pronman.com,

13

dan-pronman.com), the Court denies summary judgment to both Defendants and Plaintiffs.

As for the domain names B. Styles admits he owned at one time (gpmusclecars.com, moviestarsmusclecars.com garyconman.com), the Court also denies both Defendants' and Plaintiffs' motions for summary judgment.  Based on the affidavit of Patrick Young, there is a genuine issue of material fact as to whether B. Styles did transfer those domain names.

 Finally, Plaintiffs have failed to raise a genuine issue of material fact as to whether the GoDaddy account number 33703957 was operated and controlled by B. Styles.  There is no competent record evidence to support the conclusion that B. Styles had any connection to that account number and the domain names associated with it.  Thus, summary judgment is granted to Defendants as to the remaining domain names (moviestarmusclecar.com, danconman.com, garypornman.com, danpornman.com, dpmusclecars.com).

C.  Counts II, V and VIII (Federal Trademark Infringement and Unfair Competition pursuant to Lanham Act § 43(a), Common Law Trademark Infringement and FDUTPA)

To prevail on a claim of trademark infringement in this case, plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark "in connection with the sale . . . or advertising of any goods," and (5) that the defendants used the mark in a manner likely to confuse consumers.[3] North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211,

---

[3] The legal analysis is the same for Florida unfair competition claims.  Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1521 (11th Cir.1991) (holding that analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same under the federal trademark infringement claim).  The FDUTPA claim is based on the allegations that Styles' actions constitute an unfair and deceptive trade practice.  To be sure, engaging in trademark infringement is an act that constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act.  See Sun Prot. Factory, Inc. v. Tender Corp., No. 604CV732ORL19KRS, 2005 WL 2484710, at *13 (M.D. Fla. Oct. 7, 2005).   Thus, to the extent

1218 (11th Cir. 2008).

"[O]nly those marks capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently 'distinctive,' are eligible for . . . protection as common law marks under the Lanham Act." Tana v. Dantanna's, 611 F.3d 767, 774 (11th Cir. 2010). The Eleventh Circuit recognizes "four categories of distinctiveness, listed in ascending order of strength: "(1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks." Id. at 774.

Defendants contend that Plaintiffs' marks are descriptive marks. With respect to descriptive marks, "a plaintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term." Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1525 (11th Cir.1991). "Descriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring "secondary meaning." Tana, 611 F.3d at 774 (citing 15 U.S.C. § 1052(f)). Aside from a consumer survey, there are four factors to consider in determining whether a mark has acquired secondary meaning: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to

---

that some of Plaintiffs' intellectual property claims survive summary judgment, the FDUTPA claim does as well.

which the public actually identifies the name with the plaintiff's product or venture." Conagra

Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir.1984). "Names—both surnames and first

names—are regarded as descriptive terms and therefore one who claims federal trademark rights

in a name must prove that the name has acquired a secondary meaning." Tana v. Dantanna's,

611 F.3d 767, 774 (11th Cir. 2010).

        The record evidence shows that with respect to the marks at issue, the advertising and

promotion of the marks were not sufficient to establish secondary meaning with the relevant

public. Taking the facts in the light most favorable to Plaintiffs, they spent $10,000.00 in

advertising using the Movie Star Muscle Cars mark. (DE 272 at 171.) See Gift of Learning, 329

F.3d at 801 (no secondary meaning established when the plaintiff generated $6,000–$8,000 in

licensing fees over a three-year period, and spent $10,000 per year on marketing expenses over a

three-year period). Next, the names D. Pronman and G. Pronman have been referenced in six

print articles from four classic car magazines, and the reference to Plaintiffs refers to their

ownership of the cars. See MJM Productions v. Kelley Productions, Inc., 2003 WL 22205129, at

* 8 (D.N.H. Sept. 24, 2003) (supplying evidence of unsolicited media attention of a film is

insufficient when that information is not accompanied by evidence of circulation or audience

statistics which would "enable the court to determine whether these stories reached enough

consumers to create secondary meaning throughout the state"). By the same token, several car

enthusiasts and dealers have stated that Plaintiffs' names are not synonymous with finding and

procuring rare classic cars or valuing, verifying or restoring classic cars. Lastly, there is no

evidence of any pervasive or sustained association between Plaintiffs and B. Styles that would

suggest the relevant public identifies the two together. Klayman v. Freedom's Watch, 765 F.

Supp. 2d 1348, 1358-59 (S.D. Fla. 2008).

Plaintiffs, however, contend that GPMusclecars and DPMusclecars and Plaintiff's personal names are suggestive marks, not descriptive marks.  With respect to Plaintiffs' personal names, those marks are not inherently distinctive and merely descriptive.  Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1520 (11th Cir. 1991) (citing 1 J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 13:2 (2d ed. 1984)).   With respect to the marks GPMusclecars and DPMusclecars, Plaintiffs' point to K.S.R. X–Ray Supplies, Inc. v. Southeastern X–Ray, Inc., No. 6:11–cv–1600–Orl–36GJK, 2010 WL 4317026, (S.D. Fla. Oct.25, 2010) which involved the mark KSR X-RAY ℠.  That mark was an acronym made up of the initials of KSR's principals' last names (K and S) and the shared initial of the principals' first names.  Id. at * 5.  The Court found that the mark, as a whole, did not suggest or describe the goods or services offered thereunder, namely x-ray supplies, films and equipment. Id.  The Court found it was an arbitrary mark. Id.

After careful review, with respect to GPMusclecars and DPMusclecars, the Court finds that, based on this record, it cannot make a determination of the type of mark at issue and summary judgment is denied with respect to these marks.

    D.  Count III (Federal Trademark Infringement under Lanham Act § 32(1)(a))

Defendants move for summary judgment on the claim brought by Plaintiffs under section 32(1)(a) of the Lanham Act.  This section provides relief to owners of a federal trademark registration from persons who use an infringing mark in interstate commerce in connection with the sale, distribution or advertising of goods or services. 15 U.S.C. § 1114.  Section 32(a) creates a cause of action only for infringement of a registered mark.  See Tana v. Dantanna's, 611

F.3d 767, 773 n. 5 (11th Cir. 2010); <u>Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D.,</u>

<u>P.A,</u> 734 F. Supp. 2d 1262 1268 n. 12 (M.D. Fla. 2010).  Here, there is no dispute that none of

Plaintiffs' marks are registered.  (Pl. Responses to Request for Admissions ¶ ¶ 13, 15, 17, 19, Ex.

4, DE 354-4.) Thus, summary judgment is granted to Defendant on this claim.

> E.  Counts IV and VII (Federal Trademark Dilution under Lanham Act § 43(c) and
> Common Law

To prevail on a federal dilution claim, a plaintiff must show, among other things, that its

mark is famous.  <u>It's a 10, Inc. v. Beauty Elite Group, Inc.,</u> No. 13–60154–CIV, 2013 WL

6834804, at * 7 (S.D. Fla. Dec. 23, 2013).  As explained by a court in this district:

> The threshold for a showing of fame, however, is exceptionally high. "It is well-established
> that dilution fame is difficult to prove." <u>Coach Servs., Inc. v. Triumph Learning LLC, 668</u>
> <u>F.3d 1356,1373–76 (</u>Fed. Cir. 2012) ("COACH" brand of luxury bags insufficiently famous
> to support dilution). Only marks "widely recognized by the general consuming public of the
> United States" can qualify for dilution protection. 15 U.S.C. § 1125(c)(2)(A). Even a
> showing that a mark is well-known in its particular market is insufficient, and instead the
> mark must "engender immediate recognition in the general public." <u>Michael Caruso & Co.</u>
> <u>v. Estefan Enters., Inc.,</u> 994 F. Supp. 1454, 1463 (S.D. Fla.1998); <u>see</u> also <u>Top Tobacco, L.P.</u>
> <u>v. N. Atl. Operating Co.,</u> 509 F.3d 380, 384 (7th Cir.2 007) (noting that 2006 amendments
> to 15 U.S.C. § 1125(c) eliminated possibility of dilution premised on "niche" fame). In other
> words, a party claiming dilution must establish that its mark is practically a household name,
> of the likes of such giants of branding as *Exxon, Kodak, and Coca–Cola.*

<u>Id.</u> at * 8 (emphasis added).

Here, there is no record evidence that any of the subject marks are famous and can be

compared in any meaningful way to Exxon, Kodak or Coca-Cola.  Not surprisingly, Plaintiffs'

opposition to summary judgment did not address this argument.   The Court finds that summary

judgment is appropriate on both the federal and state law dilution claims.[4]

F.  Count VI (Federal Copyright Infringement)

Defendants move for summary judgment on Plaintiffs' copyright claim over photographs that Plaintiffs claim B. Styles used on the website www.moviestarsmusclecars.com and www.GaryPronman.com. Defendants contend that there is no record evidence to support a finding that B. Styles ever created or controlled these websites.  In addition, Defendants claim that the alleged copyright infringement preceded the copyright registration, Plaintiffs are limited to actual damages and there is no evidence of actual damages in the record.

Putting aside whether or not B. Styles created or controlled the websites that allegedly infringed on Plaintiffs' alleged copyright, the Court observes that there is nothing in the record that shows that Plaintiffs sold or licensed a copyrighted piece of work for value or that the photographs on the websites in question impaired the value of the compilation.  Notably, Plaintiffs do not address this issue in their response to Defendants' motion.  For these reasons, summary judgment is granted to Defendants on this claim.

G.  Count X (Injunction)

Count X is labeled "Preliminary and Permanent Injunctions against all Defendants."  In other words, it is seeking a legal remedy, and is not bringing a separate cause of action.  See Espinoza v. Countrywide Home Loan Servicing, L.P., No. 14–20756–CIV,  2014 WL 3845795, at * 7 (S.D. Fla. Aug. 5, 2014) (citing Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117,

---

[4] The Court finds that the claim fails under Florida dilution law as well. See Great Southern Bank v. First Southern Bank, 625 So. 2d 463, 470 n.20 (Fla. 1993) (explaining Florida dilution law and adopting the reasoning of Restatement which notes that the trademark Kodak is the type of mark that could be diluted.)

1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction

must be based upon a cause of action .... There is no such thing as a suit for a traditional

injunction in the abstract." )).  As such, it is an improper count and summary judgment is

granted.

H.  Defendants' Abuse of Process Counterclaim

Defendants move for summary judgment on their abuse of process claim and Plaintiffs

move for summary judgment on this claim as well.  This claim alleges that Plaintiffs have abused

process by (1) joining B. Styles' girlfriend to this lawsuit, (2) claiming that B. Styles fraudulently

transferred money to his girlfriend, and (3) inflating their damages. Plaintiffs move for summary

judgment on this counterclaim as well.

A cause of action for abuse of process requires: (1) an illegal, improper, or perverted use

of process by the defendant; (2) an ulterior motive or purpose in exercising the illegal, improper,

or perverted process; and (3) damage to the plaintiff as a result of the defendant's action." Valdes

v. GAB Robins North America, Inc., 924 So.2d 862, 867 n. 2 (Fla. Dist. Ct. App. Dist. 2006)

(quoting Hardick v. Homol, 795 So.2d 1107, 1111 n. 2 (Fla. Dist. Ct. App. Dist. 2001)) . Abuse

of process is concerned with the improper use of process after it has been issued.  McMurray v.

U–Haul Co., Inc., 425 So.2d 1208, 1209 (Fla. Dist. Ct. App. Dist. 1983).

Here, the Court cannot find, as a matter of law, that Plaintiffs committed abuse of

process.  In so moving, Defendants claim that Plaintiffs were "well aware" (Def. Mot. at 44) that

the damages were grossly inflated, that Plaintiffs were not entitled to the damages and that B.

Styles was capable of paying any damages.  Simply put, these are factual questions that must be

brought before a fact finder.  The Court cannot decide, as a matter of law, what awareness

Plaintiffs possessed.  Thus, summary judgment will not be entered on this count on behalf of either party.

I.  Defendants' Trademark Invalidity and Non-Infringement Counterclaim

Plaintiffs move for summary judgment on this counterclaim, stating that Defendants lack standing to invalidate the common law rights that Plaintiffs possess in their trade and service marks.  Plaintiffs, however, rely upon caselaw that pertains to a registered trademark and is therefore inapposite.  Furthermore, instead of citing to evidence, Plaintiffs simply cite to the Magistrate Judge's order denying their application for a temporary restraining order and preliminary injunction.  For this reason, Plaintiffs are not entitled to summary judgment on Defendants' Trademark Invalidity and Non-Infringement counterclaim.

J.  Defendants' Copyright Invalidity and Non-Infringement Counterclaim

Plaintiffs move for summary judgment on Defendants' counterclaim seeking a determination that Plaintiffs' copyright is invalid and that they have not infringed on Plaintiffs' copyright.  Plaintiffs have submitted a copy of their copyright registration as proof of their ownership of a valid copyright.  Defendants' counterclaim alleges that Plaintiffs made material misrepresentations during the procurement of the registration.  Defendants point to deposition testimony from D. Pronman that some of the photographs covered by the copyright registration were not taken by either Plaintiff, despite the fact that they were both listed as authors.  (D. Pronman Dep. 273-74, DE 272-2.)  "Omissions or misrepresentations in a copyright application can render the registration invalid" where there has been "intentional or purposeful concealment of relevant information" and proof of scienter is required.  St. Luke's Cataract and Laser Institute, P.A. v. Sanderson, 573 F.3d 1186, 1201 (11th Cir. 2009).

Here, Plaintiffs did not file a response to Defendants' assertions regarding the statement of authorship in the registration.  Thus, the Court cannot find, as a matter of law on the present record, that Plaintiffs' copyright registration is valid.  Thus, Plaintiffs' motion for summary judgment on Defendants' counterclaim for copyright invalidity and non-infringement is denied.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendants' Motion for Final Summary Judgment against Plaintiffs on All Counts of the Third Amended Complaint and Counts II, III and IV of Defendants' Counterclaim (DE 354) is **GRANTED IN PART AND DENIED IN PART**.

2)      Plaintiffs' Motion for Partial Summary Judgment (DE 356) is **DENIED.**

3)      Plaintiffs' Motion to Suppress Unverified Deposition Transcript of Corporate Representative Witness Moviestars Musclecars (DE 363) is **DENIED AS MOOT** on the basis that the Court did not rely on the deposition in this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of January, 2015.

_____

KENNETH A. MARRA
United States District Judge